J-S55035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.K.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W. | : | No. 616 MDA 2017 |

Appeal from the Decree Entered March 10, 2017
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2015-1472

BEFORE:   DUBOW, RANSOM, and STRASSBURGER[*], JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 13, 2017**

A.W. (Mother) appeals from the March 10, 2017 decree which terminated involuntarily her parental rights to her minor son, E.K.J. ("Child").[1]  After careful review, we affirm.

The orphans' court summarized the relevant factual and procedural history of this matter as follows.

> [Child] is a minor male child who was born [in August 2014] to Mother during her incarceration at the Muncy State Correctional Institute (Muncy SCI).  Prior to [Child's] birth, Mother arranged through Lighthouse Prison Ministries to have [J.B. and M.B. (collectively, Petitioners)] act as the guardians and caregivers for [Child] while she was incarcerated.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court issued a separate decree on December 1, 2016, terminating involuntarily the parental rights of J.J., Child's father.  J.J. did not file a brief in connection with this appeal, nor did he file his own separate appeal.

[2] Petitioners "were part of a prison ministry … and … were matched with a mom.  In [July 2014, they] received a letter from [Mother] saying she had
*(Footnote Continued Next Page)*

Petitioners met Mother at Muncy SCI for the first time in early August of 2014 and Petitioners came to the hospital when [Child] was born. [Child] had health problems at birth, reportedly due to drug and alcohol use by Mother during her pregnancy, and [Child] spent ten days in the NICU due to meconium aspiration and general breathing issues before he was released to Petitioners on August 31, 2014. [Child] has lived with Petitioners since that time.

Mother and Petitioners agreed to a temporary custody order on September 12, 2014 that laid out the scope and duration of [Child's] care. Petitioners were told that Mother was incarcerated for a parole violation and the duration of the guardianship would last until her release in June 2015. Petitioners brought [Child] to visit with Mother twice a month at Muncy SCI…. There were only two occasions when Petitioners were unable to bring [Child] to visit. On the first occasion Mother was in solitary confinement for getting into an altercation. On the second occasion Mother had been transferred to a different facility.

Mother was denied parole in April or March of 2015. Around that time Mother contacted Petitioners and asked them to care for another child of hers who lived in Erie County. She indicated that she did not like the resource family that was caring for the child. When Petitioners called Erie County Children and Youth they were told that the child was placed in protective care so that Mother would be unable to contact the child or the family. Petitioners then discovered that Mother had a previous charge of endangering the welfare of a child and that she was prohibited from having contact with minors. Accordingly, Petitioners stopped bringing [Child] for visitation with Mother in July of 2015 and filed a petition to involuntarily terminate Mother's parental rights on July 1, 2015. Mother wrote a letter to [the orphans' court] to contest the petition and she was appointed counsel. Petitioners subsequently withdrew their petition on October 16, 2015. Petitioners then filed for custody on October 23, 2015[,] and were granted physical and legal custody by order of the court on October 29, 2015.

*(Footnote Continued)* ————————————

gotten [their] name from Prison Ministries and that she would like [Petitioners] to care for her son." N.T., 2/13/2017, at 6-7.

Mother was released from prison on January 11, 2016. As a result of the custody proceeding, a risk[-]of[-]harm hearing was scheduled to address Mother's criminal history on January 12, 2016 and March 16, 2016.[3] On January 13, 2016, the Judge presiding over the risk[-]of[-]harm hearing was sent a letter from the County of Erie Department of Human Services Office of Children and Youth advising that Mother was an indicated perpetrator of abuse. The incident which led to her indicated status occurred on January 21, 2011[,] and involved Mother's failure to seek medical attention for her child. It was reported that her child was diagnosed with 1st, 2nd, and 3rd degree burns to the bottom of both feet and Mother did not seek medical attention for the child for at least ten days. The Erie County Children and Youth Agency requested a finding of aggravated circumstances as to Mother which was granted by the [Erie County juvenile court].

On March 23, 2016[,] after hearing the testimony at the risk[-]of[-]harm hearing, a Lancaster County Judge found that Mother posed a serious risk of harm to [Child.] The Court found that any contact between Mother and [C]hild would have to be supervised in the presence of an agreed-upon supervisor or competent professional….

Orphans' Court Opinion, 3/10/2017, at 2-4 (footnote omitted).

On October 14, 2016, Petitioners filed a second petition to terminate Mother's parental rights to Child involuntarily. The orphans' court conducted a termination hearing on February 13, 2017. Following the hearing, the court issued a decree, dated March 10, 2017, terminating Mother's parental rights. On April 10, 2017, Mother filed a concise statement of errors

---

[3] **See** 23 Pa.C.S. § 5329(a) (requiring a court to consider a parent's criminal history prior to making a custody determination); 23 Pa.C.S. § 5329(a.1) (requiring a court to consider a parent's history of child abuse as to that child or other children before making a custody determination).

complained of on appeal.[4]  Mother filed an amended concise statement on April 11, 2017, along with a notice of appeal.[5]

Mother now raises the following issues for our review.

A. Did the [orphans'] court commit an error of law by allowing [Petitioners'] deliberate and continuing course of conduct to be used as a basis for termination?

B. Does the aforementioned error of law require this Honorable Court overrule the [orphans'] court's Decree?

Mother's Brief at 3 (suggested answers and orphans' court answers omitted).

_____

[4] Mother filed her first concise statement the day before she filed her notice of appeal.

[5] Generally, a party must file his or her notice of appeal within thirty days of the entry of the order being appealed.  Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken.").  Here, thirty days after March 10, 2017, was Sunday, April 9, 2017.  Thus, under normal circumstances, Mother's notice of appeal would have been due by Monday, April 10, 2017.  1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted from the computation.").

In this case, however, the decree terminating Mother's parental rights was never entered, as the docket does not indicate that notice of the decree was given.  As a result, the thirty-day appeal period never began to run.  **In re L.M.**, 923 A.2d 505, 509 (Pa. Super. 2007) (citing **Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999)) ("[T]he 30–day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given.").  In addition, while the decree is dated March 10, 2017, and has a docket date of March 10, 2017, it is stamped as having been filed on March 15, 2017.  We therefore conclude that Mother's notice of appeal was timely filed on Tuesday, April 11, 2017.

We consider Mother's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to subsections 2511(a)(1) and (b), which provide as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

Here, Mother presents two interrelated issues for our review. In her first issue, Mother contends that the orphans' court erred by terminating her parental rights pursuant to subsection 2511(a)(1). Mother's Brief at 7-9. In her second issue, Mother argues that the court's error with respect to subsection 2511(a)(1) was "fatal" and requires reversal. *Id.* at 9-10. Mother makes no effort to challenge the termination of her parental rights pursuant to subsection 2511(b) in the argument section of her brief, nor did

she include any such challenge in her concise statement or statement of questions involved. Thus, we conclude that Mother waived any challenge as to subsection 2511(b), and we focus solely on subsection 2511(a)(1). **See In re M.Z.T.M.W.**, ___ A.3d ___, 2017 WL 2153892 (Pa. Super. May 17, 2017) (holding that the appellant waived her challenge to subsection 2511(b) by failing to include it in her concise statement and statement of questions involved).

To meet the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze subsection 2511(b). **Id.** (quoting **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and

effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray,* 331 A.2d 652 (Pa. 1975)).

Instantly, Mother argues that the orphans' court erred by terminating her parental rights, because Petitioners prevented her from maintaining contact with Child. Mother's Brief at 7-10. Mother argues that she strove to maintain a relationship with Child, but that Petitioners engaged in "deliberate and continuing conduct, which completely obstructed her[.]" *Id.* at 8. Mother places particular emphasis on *In re J.S.M.'s Adoption*, 424 A.2d 878, 880 (Pa. 1981), wherein our Supreme Court explained that a parent's lack of communication with his or her child cannot be used as a basis to terminate parental rights, "[w]here the absence of communication results from the deliberate conduct of the opposing parent[.]"

In its opinion accompanying the decree on appeal, the orphans' court found that Mother evidenced a settled purpose of relinquishing her parental claim to Child, and that she refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition. Orphans' Court Opinion, 3/10/2017, at 6. The court found that

Mother performed no parental duties on Child's behalf during the relevant six months, and that Mother made no effort to maintain a relationship with Child. *Id.* at 7.

The orphans' court also rejected Mother's claim that Petitioners prevented her from maintaining contact with Child.

> Mother cannot claim that Petitioners created barriers to the development of a parent-child relationship. Petitioners took [Child] to visit with Mother at the prison twice a month until they discovered Mother's history of child abuse. Mother has always had Petitioners' phone number and has always been able to call or text them. Petitioners did not block her calls or refuse to send pictures and updates of [Child.] The only barrier between Mother and her son was self-imposed. The court-ordered supervised visits were available to her, but she did not pursue them and Mother has not made any attempt to visit her son since July of 2015.

*Id.*

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, Child's prospective adoptive mother, J.B., testified at length concerning the circumstances that brought Child into her care. J.B. testified about Petitioners' initial attempt to terminate Mother's parental rights in 2015, as well as the subsequent custody proceedings, which culminated in the March 23, 2016 order finding that Mother poses a risk of harm to Child.

Concerning the six months immediately preceding the filing of the termination petition, on October 14, 2016, J.B. testified that Mother did not visit with Child. N.T., 2/13/2017, at 55. While Mother was permitted to

have supervised visits pursuant to the risk of harm order, Mother never suggested an appropriate supervisor. *Id.* at 23-24. Moreover, Mother did not send any cards to Child, nor did she send gifts or financial assistance. *Id.* at 39.

While Mother maintained contact with Petitioners during the relevant six months, J.B.'s testimony reveals that this contact was limited. Mother's primary means of contacting J.B. was via text message. *Id.* at 26. Mother would send text messages to J.B. asking for pictures of Child, and J.B. would send pictures back to Mother. *Id.* J.B. also wrote a letter to Mother in April 2016. *Id.*

J.B. further testified that she and Mother had a phone conversation in May 2016, during which Mother indicated that she wanted Petitioners to adopt Child. *Id.* at 27. She explained, "she was just telling me her drug of choice, who the father was, what kind of contact she wanted to have with him, which was none, who we were to send occasionally letters and pictures to. I think the maternal grandmother." *Id.* at 28. As a result, Petitioners sent a consent to adoption form to Mother's attorney, as well as a voluntary post-adoption contact agreement. *Id.* at 29. However, Mother did not sign the consent form. *Id.* J.B. later learned that Mother had once again been incarcerated in June 2016, due to a parole violation. *Id.* at 30. Mother was released in August 2016, and contacted J.B. via text message, saying that

she would "fight for her son." *Id.* at 31. J.B. then received "sporadic texts" from Mother from August 2016 until November 2016.[6] *Id.* at 33.

In support of her testimony, J.B. presented exhibits containing every text message sent to her by Mother since April 2016. *Id.* at 35. These exhibits were entered into evidence as Petitioner's Exhibits 8 and 9, and are contained in the certified the record on appeal. The exhibits reveal that, during the relevant six-month period, Mother sent text messages to J.B. on April 22, 2016, April 29, 2016, May 8, 2016, May 9, 2016, May 18, 2016, May 19, 2016, May 28, 2016, May 30, 2016, August 2, 2016, August 5, 2016, August 16, 2016, August 21, 2016, September 7, 2016, September 22, 2016, September 29, 2016, October 10, 2016, and October 11, 2016. *See* Petitioner's Exhibit 8. Many of Mother's text messages consist of her asking for pictures of Child or asking how Child is doing. *Id.* In multiple text messages sent in May 2016, Mother indicates that she would like Petitioners to adopt Child. *See, e.g., id.* (text message received May 18, 2016) ("Well since you don't want to talk I just want to say take damn good care of my son he's you[r] son now I am signing him over to you open adoption[.]").

_____

[6] J.B. also testified that she received a Facebook message from Mother in the fall of 2016, and that she and Mother corresponded via e-mail at an unspecified time. N.T., 2/13/2017, at 31, 36.

Thus, the record supports the finding of the orphans' court that Mother evidenced a settled purpose of relinquishing her parental claim to Child and/or refused or failed to perform parental duties during the six months preceding the filing of the termination petition. Contrary to the argument presented in Mother's brief, Petitioners did not prevent Mother from maintaining contact with Child. Mother's failure to maintain contact with Child was entirely her own doing, as she failed to pursue visitation by suggesting an appropriate supervisor. Moreover, while Mother sent text messages to J.B. asking about Child, it is clear that occasional text messages are not sufficient to preserve Mother's parental rights. ***See B.,N.M.***, 856 A.2d at 855 (providing that a parent must display more than a "merely passive interest in the development of the child").

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child, we affirm the court's March 10, 2017 decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2017

- 12 -